IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**SOUTHWEST MISSISSIPPI REGIONAL**                              **PLAINTIFF**
**MEDICAL CENTER**

**VS.**                                         **CAUSE NO. 5:16-cv-28 DCB-MTP**

**PST SERVICES INC.F/K/A AS PER-SE**                            **DEFENDANTS**
**TECHNOLOGIES, INC.; MCKESSON**
**TECHNOLOGIES, AS PARENT COMPANY**
**OF PST SERVICES, INC; JOHN DOE**
**CORPORATIONS 1-15; JOHN DOE**
**INDIVIDUALS 1-15**

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Defendants', PST Services Inc. ("PST")and McKesson Technologies Inc.("McKesson"), Motion to Dismiss [docket entry no. 13]. Having considered the motion and responses, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Facts and Procedural History

Southwest Mississippi Regional Medical Center ("Southwest") is a community hospital located in Pike County, Mississippi. McKesson and PST ("Defendants") are sister-corporations specializing in the business of medical billing, technology, and collection services for health-care professionals. The parties' business relationship commenced in 2004, when Southwest contracted with McKesson to implement an information technology system to meet all of the hospital's electronic health records and information technology needs. Compl. ¶ 11.

From 2010 to 2012, McKesson provided Southwest with access to

its "Horizon" billing system. Id. at ¶ 13. In 2012, McKesson informed the hospital of future plans to "sunset" its Horizon system and encouraged Southwest to consider moving to its newer IT system, "Paragon." Id. McKesson allegedly represented to Southwest that the new Paragon system would interface with the hospital's existing STAR system, which Southwest used to collect accounts receivable from patients and third-party payers. Compl. ¶ 15. In claimed reliance on Paragon's expanded capacity for converting the STAR system with uninterrupted collection of receivables, Southwest entered into a new contract with McKesson on February 28, 2012 for the installation and related services of the Paragon system. Id. at ¶ 16.

Shortly thereafter, McKesson informed Southwest that it could not, despite prior claims, convert the STAR system to the Paragon system. Id. at ¶ 17. Instead, McKesson agreed to bring in its subsidiary company, PST, to collect the accounts receivable that remained in the STAR system at the same rate and in the same amounts as Southwest was collecting prior to the conversion. Id.

On March 1, 2013, Southwest entered into a contract with PST to that effect. PST agreed to collect a portion of the hospital's accounts receivable from the STAR system in exchange for a payment of 3.75% of all gross collections received, and it agreed to do so in accordance with industry practices, applicable laws, rules, and regulations including those of third-party payers. Id. at ¶ 19.

2

In April 2016, Southwest filed suit against McKesson and PST, alleging that PST failed to comply with its material obligations under the 2013 contract ("the Contract") and caused the hospital to forfeit substantial amounts of otherwise collectable accounts receivable revenue from the STAR system as a result. Compl. ¶ 21. Southwest listed twelve (12) counts in its Complaint[1], seeking relief through both tort and contract claims. Defendants now move to dismiss each of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Choice of Law

As an initial inquiry, the Court must determine whether the substantive law of Georgia or Mississippi applies to this case. McKesson and PST contend that the plain language of the Contract entered into between the parties demands the application of Georgia law to all claims. In opposition to the motion, Southwest urges the Court to apply Mississippi law in accordance with the state's fundamental public policy.

Because jurisdiction is based on diversity, the Court is bound to apply Mississippi's choice of law rules to determine which state law governs. See <u>Williams Pounders Architects, P.C. v. Tunica</u>

---

[1] The causes of action alleged include: (1) Breach of Express Warranties; (2) Civil Conspiracy; (3) Acting in Concert; (4) Gross Negligence; (5) Breach of Contract against PST; (6) Negligent Failure to Perform Contractual Duties against PST; (7) Tortious Breach of Contract against PST; (8) Breach of Covenant of Good Faith and Fair Dealing against PST; (9) Negligent Misrepresentation against PST; (10) Intentional Misrepresentation, Fraud, and Fraudulent Inducement against PST; (11) Negligent Training and Supervision against PST; and (12) Breach of Express Warranties against PST.

County, Miss, 597 F.3d 292, 295 (5th Cir. 2010). If a true conflict exists, Mississippi courts engage in a three-step analysis: "(1)determine whether the laws at issue are substantive or procedural; (2)if substantive, classify the laws as either tort, property, or contract; and (3)look at the relevant section of the Restatement (Second) of Conflict of Laws." Williams v. Liberty Mut. Ins. Co., 741 F.3d 617 (5th Cir. 2014). There is no dispute that the laws at issue are substantive. Recognizing that "the law of a single state does not necessarily control every issue in a given case," the Court shall address each claim in turn. Williamson Pounders Architects, 597 F.3d at 296.

*A. Contract Claims*

Southwest alleges breach of contract and breach of the covenant of good faith and fair dealing against PST and breach of express warranties against both defendants. Defendants argue that, under Georgia law, the plain language of the contract invalidates each of Southwest's claims. At issue is whether a choice of law provision contained in the contract between Southwest and PST mandates the application of Georgia law to these contract claims. For the reasons that follow, this Court finds it does.

Section 14.4 of the Contract between Southwest and PST provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to any conflicts of law rules of such State, except to the extent such laws are preempted by federal

4

law, in which case federal law shall govern. Contract § 14. Following § 187 of the Restatement (Second) of Conflicts, Mississippi courts will honor choice of law provisions unless: (1) the state chosen has "no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice; or (2)application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." <u>ABS Services, Inc. V. New York Marine & General Ins. Co.</u>, 524 Fed. App'x 946, 950 (5th Cir. 2013)(internal citations omitted). Both McKesson and PST have their principal places of business in Georgia, and neither party disputes the state's substantial relationship to the parties or transaction. Southwest instead advances two policy-based defenses against the application of Georgia law.

First, Southwest contends that Mississippi's fundamental policy against enforcing exculpatory clauses that limit the liability of private entities in contracts with state agents precludes application of Georgia law. In their motion, Defendants argue that each of Southwest's contract claims should be dismissed because Section 11 of the Contract expressly disclaims all damages set forth in the Complaint. According to Defendants, Georgia law

5

allows contracting parties to freely waive numerous substantial rights, including the right to seek recourse in the event of a breach. Southwest contends that Georgia's policy in favor of exculpatory provisions is in stark contrast to the fundamental public policy of Mississippi, and as such, the Court should apply Mississippi law to find that the clause is invalid.

Second, Southwest argues that applying Georgia law to the claims at issue would violate Mississippi's fundamental public policy against enforcing merger clauses in contracts with public entities[2]. Defendants posit that, under Georgia law, a valid merger clause precludes any subsequent claim of deceit based upon pre-contractual representations. As a result, Defendants move to dismiss all of Southwest's deceit-based claims in light of the merger clause located in Section 14 of the Contract. In its Response, Southwest argues that the Court should refuse to enforce the Contract's choice of law provision because doing so would violate Mississippi's fundamental policy against merger clauses.

In considering whether a clause should be invalidated on public policy grounds, the Court should consider whether the clause "is prohibited by the Constitution, a statute, or condemned by some decision of the courts construing the subject matter." Id. at 565

---

[2] Merger clauses seek to limit litigation over oral representations made outside the written agreement. In essence, the merger clause purports to "merge" all preliminary discussions, negotiations, and representations into the single written agreement. Southwest proposes that enforcing such a clause in contracts between community hospitals and private entities violates Mississippi's fundamental public policy.

(internal quotation omitted). Although clauses limiting liability have historically been viewed with disfavor in Mississippi jurisprudence, recently "the Mississippi Supreme Court has expressed a willingness to validate such agreements based on the now-dominant public policy that parties should be free to contract." Natchez Regional Medical Center v. Quorum Health Resources, LLC, 879 F. Supp.2d 556, 562 (S.D. Miss. 2012). "The standard for what constitutes a violation of public policy is not always clear; thus invalidating a clause as a violation of public policy is a judicial power easily abused and should be done with an abundance of caution." Id. at 563.

In support of its first policy argument, Southwest relies exclusively on Natchez Regional, where the Court voided the exculpatory clause in a community hospital contract on policy grounds after determining that enforcement of the clause would shift a "serious and unacceptable risk of harm to the public." Id. at 568. Southwest would have the Court adopt this holding as evidence of Mississippi's blanket policy against exculpatory clauses in community hospital contracts. However, this generalization not only mischaracterizes the Court's prior decision, but it also advances an argument which this Court explicitly rejected in Natchez Regional. Id. at 566 ("exculpatory clause[s] entered into by the state or its agencies [do] not violate public policy per se"). The Court "decline[d] to adopt

such a broad holding" in <u>Natchez Regional</u>, and it chooses to do the same now. <u>Id</u>.

Similarly, Southwest's second policy defense must also fail. As to the merger clause, Southwest presents no actual violations of Mississippi public policy – only differences in substantive law. Nowhere in the hospital's Response does it show that contractual merger clauses with community hospitals are "prohibited by the constitution, statute, or condemned by some decision of the courts construing the subject matter." <u>Id</u>. at 565. And Southwest itself concedes that Mississippi case law is void of any outright declaration against merger clauses in public hospital contracts per se. While Southwest does point to Mississippi case law that differs from Georgia, not every difference in the law is a violation of public policy.

Finding no fundamental state policy to prevent enforcement of the choice of law provision, the Court will give effect to the express agreement between the parties and apply Georgia law to the contract claims.

*B. Tort Claims*

Among the allegations in its complaint, Southwest alleges eight tort-based claims: (1) acting in concert; (2) gross negligence; (3) negligent failure to perform contractual duties; (4) tortious breach of contract; (5) negligent misrepresentation; (6) intentional misrepresentation; (7) fraud and fraudulent

inducement; and (8) negligent training and supervision. Defendants rely on the Contract's choice of law provision to argue that Georgia law should also govern the tort claims. While the Court finds the choice of law provision is enforceable with respect to the contract claims, it declines to extend its application to the tort claims at issue.

"Under Mississippi law, where a choice of law provision states an agreement is 'governed by' the laws of another state, the law of the selected state applies to contract based claims while tort claims are governed by Mississippi law." Russell v. Allianz Life Ins. Co. of North America, 2014 WL 4545807 at *4 (N.D. Miss. 2014)(citing Cypress Pharmaceuticals, Inc. v. CRS Management, Inc., 827 F.Supp.2d 710 (S.D. Miss. 2011)). Further, applying the forum state's choice of law analysis to the tort claims at issue supports the application of Mississippi law. In tort matters, Mississippi considers the factors set forth in Section 145 of Restatement (Second) of Conflict of Laws: (a)where the injury occurred; (b) where conduct causing the injury occurred; (c)the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) where the relationship between the parties is centered. Williams v. Liberty Mut. Ins. Co., 741 F.3d 617, 622 (5th Cir. 2014). Here, the injury occurred in Mississippi, the conduct causing the injury occurred in whole or in part in Mississippi, and Southwest is a community hospital based in

Mississippi. Accordingly, the Court will apply Mississippi law to Southwest's tort claims.

### III. Analysis and Discussion

McKesson and PST maintain that Southwest's Amended Complaint fails to state a claim upon which relief may be granted. In support of its motion, Defendants argue: (1)Georgia's economic loss doctrine bars tort claims that arise out of purely contractual duties; (2) the Contract's merger clause forecloses the Hospital's fraud claims; and (3) the Contract's limitation of liability clause disclaims all damages prayed for by the hospital, thus barring all contract claims.

#### A. Standard of Review

Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." Lowery v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). In ruling on the motion, the court accepts all pleaded facts as true and resolves any ambiguities and doubts in favor of the plaintiff. Eze v. Resmae Mortg. Corp., 2008 WL 191958 (S.D. Miss. 2008). To survive a motion to dismiss for failure to state a claim, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" Kreway v. Countrywide Bank, FSB, 647 Fed. Appx. 437 (5th Cir. 2016)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Factual allegations in the complaint "must be enough to raise a right of relief above the speculative level, on the

assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 570.

### B. Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Breach of Warranty

Defendants first move to dismiss all contract claims alleged in the Complaint because the Contract's exculpatory limitation of liability clause expressly disclaims all damages, including special and consequential damages, which is an essential element of every contract claim. Additionally, Defendants assert that Southwest's breach of warranty claims are barred by the fact that the Contract makes no warranties, or in the alternative disclaims them. Section 11 of the Contract provides:

> DISCLAIMER/LIMITATION OF LIABILITY
>
> [PST] disclaims any and all warranties and representations, express or implied, pertaining to the provision of the Services, except as otherwise set forth herein. It is expressly understood and agreed that [PST] shall have no liability for (a) the inability of third parties or systems beyond the control of [PST] to accurately process data, (b) the transmission to [PST] of inaccurate data, (c) any losses realized or damages incurred by [Southwest] arising from [PST's] provision of the Services, or (d) any indirect, special, or consequential losses or damages suffered by [Southwest] or any third party.

Contract § 14. In opposition to the motion, Southwest disputes the validity of the exculpatory clause but grounds its argument entirely in Mississippi law, which does not apply.

The cardinal rule for contract construction under Georgia law is to ascertain the intention of the parties. Allstate Ins. Co. v.

ADT, LLC, 2015 WL 5737371, *2 (N.D. Ga. Sept. 30, 2015). The contract should be considered as a whole document, and courts should avoid any construction that renders the contract meaningless. Id. at *2. "Exculpatory or limitation-of-liability clauses can be valid and binding and are not void against public policy unless they purport to relieve liability for acts of gross negligence or willful or wonton conduct." Id. (internal citations omitted). However, such clauses require a "meeting of the minds" and must be "explicit, prominent, clear, and unambiguous" in order to be enforced. Id. at *6. The plaintiff has alleged gross negligence, and this is a question of fact.

In support of its motion, Defendants rely on Imaging Sys. Int'l, Inc. V. Magnetic Resonance Plus, Inc., 490 S.E.2d 124(Ga. App. 1997)(enforcing an exculpatory clause to preclude recovery of special damages). In Imaging Systems, the district court held that an exculpatory clause was enforceable as written because it was plainly worded, set off in its own paragraph with a capitalized heading, and all the key language was capitalized. 490 S.E.2d at 645. Further, the court noted that the clause's prohibition against the recovery of any lost profits "clearly and unambiguously" referred to the measure of damages which would have been available to the plaintiff. Id. Defendants argue that because the exculpatory clause at issue in this case is also set forth in its own paragraph with a capitalized heading, the Court should follow the same logic

12

and enforce the provision according to its terms.

    The Court, however, finds that <u>Allstate Ins. Co. v. ADT, LLC</u>, 2015 WL 5737371 (N.D. Ga. Sept. 30, 2015), a later decision distinguishing <u>Imaging Systems</u>, is more instructive. In <u>Allstate</u>, the district court determined that a similar exculpatory provision in the parties' services contract was not, as a matter of law, "prominent, explicit, clear, and unambiguous" so as to bar the plaintiff from asserting its cause of action. <u>Id</u>. The contract in <u>Allstate</u> consisted of a two-page document, with provisions printed on both sides of the page. <u>Id</u>. at *5. The exculpatory provision was printed in all capital letters and set off in its own section, under its own heading. <u>Id</u>. But, the court observed that the important limiting language of the clause was "written in the same single-spaced, small typeface as the majority of the Contract." <u>Id</u>.(internal quotation omitted). With these considerations, the court denied the defendant's 12(b)(6) motion after concluding that the defendant's argument based on the exculpatory clause did not provide a basis to dismiss the pending contract claims for failure to state a claim.

    While the limitation of liability clause in the Contract between PST and Southwest is contained in its own paragraph with a capitalized heading, the limiting language of the clause is also printed in the same single-spaced typeface as the remaining contract. Defendants point to additional parallels between the

sophistication of the parties, contractual incentives, and bargained for consideration to argue that Imaging Systems should apply, but to adopt such contentions would require the Court to engage in factual considerations beyond the purview of the Complaint.

Having decided that Georgia law applies, the Court is unknowledgeable at this phase as to whether public policy in that state precludes the effect of Section 11, which defendants posit as an absolute defense. It could be argued that the limitations set forth in Section 11 protect the defendant from any contractual claims whatsoever, thus negating all responsibilities of the defendant and, therefore, reducing the obligations of the defendant to a mere opportunity to perform as opposed to a requirement to do so.

At this stage, the Court declines to dismiss Southwest's contract claims on the basis of the language of Section 11.

*B. Fraud, Misrepresentation, Civil Conspiracy*

Defendants argue that three of Southwest's twelve causes of action are precluded by the Contract's merger clause and should be dismissed accordingly. As secondary arguments, Defendants contend that Southwest's civil conspiracy claim is barred by Georgia's intra-corporate conspiracy doctrine, and that Southwest's fraud claim fails to satisfy the heightened pleading standard articulated by Rule 9(b).

The merger clause contained in Section 14 of the Contract provides that "no representations, warranties, inducements, promises or agreements, oral or otherwise, between the parties not embodied in this Agreement will be of any force or effect." Contract § 14. Finding that Georgia law is inapplicable to the tort claims, the Court will apply Mississippi law to examine the sufficiency of Southwest's fraud, misrepresentation, and conspiracy claims.

The Fifth Circuit, citing the Mississippi Supreme Court, has held that merger clauses do not necessarily preclude a party from pursuing tort claims based on actions and representations which induced a party to sign a contract. Crosby Memorial Hospital, 48 Fed. App'x at *9 (5th Cir. Aug. 13, 2002)(fraudulent inducement claims survive the merger clause "because that fraud may have induced [the party] to sign the contract, the merger clause and all"). The Court, therefore, declines to dismiss the fraud claim on that basis.

Further, the Court finds that Southwest's fraud claim should also survive the motion to dismiss because it is pled with sufficient specificity. Rule 9(b) requires that parties state the circumstances constituting fraud or mistake with particularity. "At a minimum, [this] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." U.S. ex rel. Jamison v. McKesson Corp., 2009 WL 3176168, *3 (N.D. Miss. Sept.

15

29, 2009). In its Complaint, Southwest alleges that PST misrepresented to the hospital that it had the capability and expertise to collect the accounts receivable from Southwest's STAR system. Compl. ¶¶ 15, 61. According to Southwest, PST made these misrepresentations despite the fact that PST had no present intent to take the action necessary to ensure that it collected such amounts. Id. at ¶ 62. These representations were allegedly made a few months after Southwest agreed to purchase the Paragon system from McKesson in 2012, and Southwest's reliance on said representations caused the hospital to suffer damages. Id. at ¶¶ 17, 63-4. Finding that Southwest's Complaint meets the specificity requirements of Rule 9(b), the Court also declines to dismiss the fraud claim on this basis.

With respect to Southwest's conspiracy claim, the Court finds that Georgia law is inapplicable and dismissal pursuant to the intra-corporate conspiracy doctrine under Mississippi law would be premature. The Mississippi Supreme Court has not yet addressed the intra-corporate conspiracy doctrine, but federal courts in the state have guessed that the Court would apply the doctrine to state tort claims. Wesley Health System, LLC v. Forrest County Board of Supervisors, 2012 WL 4799506, *6 (S.D. Miss. 2012). While the standard to be applied remains unclear, "the notion [] that a parent corporation is incapable of conspiring with its subsidiary assumes that the parent controls the subsidiary." Id. As the case

16

stands, there has been no discovery as to the form or substance of Defendants' corporate structure, and the Court cannot make such an assumption based on the allegations of the Complaint. See Id.(declining to reach the merits of defendant's intra-corporate conspiracy defense at the motion to dismiss stage). Therefore, Defendants' motion is denied as to Southwest's conspiracy claim.

### C. Remaining Tort Claims

McKesson and PST urge the Court to dismiss Southwest's remaining five tort claims because they arise out of the Defendants' contractual duties and are thus duplicative and barred by Georgia's economic loss rule. Because the Court has concluded that Mississippi law governs the tort claims at issue, Defendants' reliance on Georgia's economic loss doctrine is misplaced.

Among the factual allegations in the Complaint, Southwest alleges that PST promised to collect the accounts receivable at the same levels as the hospital had been collecting, and PST promised to do so in compliance with industry standards, applicable laws, rules and regulations. The Complaint alleges that PST negligently misrepresented its capacity and expertise to Southwest, and had no present intent to take necessary action to ensure that Southwest's accounts receivable were collected in the manner agreed upon. Southwest further alleged that PST wholly failed to comply with its contractual obligations and duty of care in performing the work and providing necessary training to its employees, and that both

17

Defendants acted in conscious disregard for the rights, safety, and welfare of the hospital, its customers, and its property.

Applying Mississippi law, the Court finds that these facts, coupled with the remaining allegations in the Complaint, rise above the speculative level as required by Rule 8 and Rule 12(b)(6). Defendants' Rule 12(b)(6) motion is denied as to the claims of acting in concert, gross negligence, negligent failure to perform contractual duties, tortious breach of contract, and negligent training and supervision.

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss the Amended Complaint **[docket entry no. 13]** is **DENIED**.

**SO ORDERED**, this the 28th day of October, 2016.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE